[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11529
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-02170-WSD

UZOAMAKA O. AKPELE,

> Plaintiff -
> Counter Defendant -
> Cross Defendant - Appellant,

versus

PACIFIC LIFE INSURANCE COMPANY,

> Defendant -
> Counter Claimant - Appellee,

OPPENHEIMER & CO., INC.,
JEREME G. TINTLE,
FREDERICK S. BROWN,
ANN HERRERA,
in her capacity as Temporary Administrator of the Estate of Ignatius Akpele, et al.,

> Defendants – Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 5, 2016)

Before WILLIAM PRYOR, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After her husband died, Ms. Uzoamaka Akpele learned that she was not the designated beneficiary in three of her husband's retirement accounts.  Ms. Akpele brought negligence and intentional tort claims against Pacific Life Insurance Company, Oppenheimer & Co., Inc., two of Oppenheimer's agents—Jeremy Tintle and Frederick Brown—and Ann Herrera, the temporary administrator of her husband's estate.   She alleged that the defendants had improperly changed the beneficiary in the accounts.

When Ms. Akpele's husband opened the first two accounts, he signed a client agreement containing a pre-dispute arbitration clause that was binding on successors. The district court therefore required Ms. Akpele to arbitrate her dispute before a FINRA panel.  The panel ruled in favor of Oppenheimer and Mr. Brown, and the district court confirmed its award.[1]

Ms. Akpele raises three arguments on appeal.  She first contends that the district court erred in granting the defendants' motion to stay proceedings and compel arbitration.  Second, she asserts that the district court erred in granting the defendants' motion to reopen the case and confirm the arbitration award.  Finally,

---

[1] Ms. Akpele settled her dispute with Pacific Life over the third account.  Mr. Tintle did not litigate below and Ms. Akpele's claims against Ms. Herrera were closely related to Ms. Akpele's claims against Oppenheimer and Mr. Brown that were submitted to arbitration.  Thus, Oppenheimer and Mr. Brown are the only parties participating in this appeal.

Ms. Akpele challenges the district court's denial (without prejudice) of her motion for default judgment against Mr. Tintle.  Upon review of the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying facts, and recite only what is necessary to resolve this appeal.

This case concerns three retirement accounts that Dr. Ignatius Akpele opened with Mr. Tintle, a financial advisor.  Mr. Tintle assisted Dr. Akpele with estate planning, but he also worked as a securities broker for Oppenheimer, a broker-dealer.  In the fall of 2008, Mr. Tintle and Mr. Brown, another broker, helped Dr. Akpele open two accounts at Oppenheimer—a 401(k) account and an individual retirement account (IRA).  Dr. Akpele signed Oppenheimer's standard agreement, which contained the following pre-dispute arbitration clause:

> Agreement to Arbitrate All Controversies. The client agrees, and by carrying an account for the client, Oppenheimer agrees, that all controversies which may arise between the client and Oppenheimer and any of its officers, directors, employees, agents or affiliates relating to, but not limited to, those involving any transaction or the construction, performance, or breach of this or any other agreement between the client and Oppenheimer pertaining to securities and other property, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted pursuant to the federal arbitration act and the laws of the state of New York, before FINRA and in accordance with its rules then in force. The award of the arbitrators, or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

The client agreement also stated in relevant part that "[c]lient hereby agrees that this Agreement and all the terms thereof shall be binding upon Client's heirs, executors, administrators, successors, personal representatives, conservators and assigns ("Successors")."

In October of 2010, Dr. Akpele purchased a third investment—a variable annuity—from Pacific Life Insurance Company.  He passed away a few months later.  Ms. Herrera, the temporary administrator of Dr. Akpele's estate, requested that Oppenheimer close the 401(k) plan and combine it into one estate account. Meanwhile, the Oppenheimer IRA was re-titled in the name of Dr. Akpele's sister, the designated beneficiary as of March of 2010.[2]

Ms. Akpele then sued Pacific Life, Oppenheimer, Mr. Tintle, Mr. Brown, and Ms. Herrera, alleging the improper change of the designated beneficiary in all three of her husband's accounts.  Oppenheimer and Mr. Brown moved to stay the proceedings and compel arbitration.  The district court concluded that Ms. Akpele was bound by the Oppenheimer client agreement and granted the defendants' motion to compel arbitration.

In February of 2013, Ms. Akpele filed a motion for default judgment against Mr. Tintle for failing to defend the action, but the district court denied it without prejudice because the claims against him were closely related to the claims against

---

[2] The record indicates that Dr. and Ms. Akpele were involved in divorce proceedings.

Oppenheimer and Mr. Brown (concerning the 401(k) and IRA accounts) that had been submitted to arbitration.  Ms. Akpele subsequently settled her dispute with Pacific Life over the variable annuity.  Because there were no remaining claims in the action, the district court administratively closed the case in August of 2013—it noted that any party with cause could move to reopen the case after arbitration.

In June of 2014, the FINRA panel held a hearing and issued an award in favor of Oppenheimer and Mr. Brown regarding Ms. Akpele's challenges to her husband's 401(k) and IRA accounts.  The district court confirmed the panel's arbitration award in February of 2015, and Ms. Akpele now appeals.

## II

We review *de novo* a district court's interpretation of an agreement to arbitrate, but we review the district court's findings of fact for clear error.  *See Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004).  "We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions *de novo*."  *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010).  We review a district court's denial of a motion for default judgment for abuse of discretion.  *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015).

### III

We address Ms. Akpele's challenges—to the district court's decision to compel arbitration, the district court's confirmation of the arbitration award, and the district court's denial of the motion for default judgment—in turn.

### A

Ms. Akpele's first argument is that the district court erred in granting the motion of Oppenheimer and Mr. Brown to stay proceedings and compel arbitration.   The Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*, reflects a federal policy in favor of arbitration, and our review of arbitral decisions is limited.  *See Frazier*, 604 F.3d at 1322.  Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).  In order to determine whether to compel arbitration, "a court must analyze whether (1) there is a valid written agreement to arbitrate; (2) the issue is . . . arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims."  *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1373 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005).

The district court first determined that the arbitration agreement existed.  It rejected Ms. Akpele's claim that defendants' failure to produce a signed copy of

6

the Oppenheimer client agreement rendered the arbitration clause unenforceable.

The district court also found that Ms. Akpele had not established an "unequivocal

denial that the agreement had been made" because she did not produce any

evidence challenging her husband's assent to the agreement.  *See Chastain v.*

*Robinson-Humphrey Co.*, 957 F.2d 851, 854–56 (11th Cir. 1992) (finding a triable

issue of whether a non-signatory to an agreement had agreed to arbitrate).

Under the FAA, state contract law informs whether arbitration agreements

are binding on third-party beneficiaries.  *See Arthur Anderson LLP v. Carlisle*, 556

U.S. 624, 630–31 (2009).  The district court concluded that Ms. Akpele's claims

were arbitrable because she was bound by the agreement as a "successor" (i.e., a

third-party beneficiary) under both federal and state law.  The district court

reasoned that, under Georgia law, third-party beneficiaries are bound by arbitration

clauses because they "are bound by any valid and enforceable provisions of the

contract in seeking to enforce their claims."  *Lankford v. Orkin Exterminating Co.*,

597 S.E.2d 470, 473 (Ga. Ct. App. 2004).  Finally, the district court rejected Ms.

Akpele's argument that the defendants waived the arbitral forum because removal

of an action to federal court is not a failure or refusal to arbitrate.  *See Morewitz v.*

*W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th

Cir. 1995).

On appeal, Ms. Akpele claims that she was not bound by the arbitration clause because she did not benefit from, consent to, or ratify an action of her husband that would bind her under the client agreement.  Ms. Akpele is correct that non-signatories to an agreement are bound by arbitration clauses in only limited circumstances.  *See MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).  Third-party beneficiary status is one exception to the non-signatory rule under Georgia law.  *See Lankford*, 597 S.E.2d at 473 (discussing the third-party beneficiary exception for a contract containing an arbitration clause).  Ms. Akpele admitted that she was a third-party beneficiary, but does not explain why this recognized exception under Georgia law should not have applied to her.  *See* Am. Compl. ¶¶ 43, 114(G).

Instead, Ms. Akpele makes a series of unpersuasive arguments to establish that she should not have been required to arbitrate.[3]  For example, Ms. Akpele directs us to the Third Circuit's decision in *Griswold v. Coventry First LLC*, 762 F.3d 264, 275 (3d Cir. 2014) (rejecting an equitable estoppel theory to compel a non-signatory to an agreement to arbitrate). This case is not helpful here. The *Griswold* court considered an equitable estoppel argument, *see id.* at 271–74, and it did not address a third-party beneficiary claim under Georgia contract law. We

---

[3] Ms. Akpele also challenges the scope of the arbitration clause and raises a defense to arbitration under O.C.G.A § 9-9-2(c)(3).  These claims were not raised below, and we decline to address them now.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (describing five narrow exceptions for addressing a new argument on appeal).

agree with the district court's interpretation of the arbitration clause and its successor provision, and we therefore affirm its decision to compel arbitration.

**B**

Ms. Akpele also argues that the arbitration decision should be vacated because the arbitral panel excluded two important documents. An arbitration decision may be vacated in only four circumstances, but only one circumstance is relevant here—"where the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). A federal court's review of arbitral evidentiary rulings is limited, but acting in bad faith, for example, may amount to misconduct under the FAA. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987) (reviewing an arbitrator's evidentiary ruling for bad faith).

Ms. Akpele does not tell us why she wanted to introduce the "defined benefit plan" and its related trust document that were sponsored by her husband's medical practice. It appears that Ms. Akpele wanted to use the documents to show that her spousal consent was required to change the Pacific Life variable annuity's beneficiary. But, Ms. Akpele failed to comply with FINRA's Code of Arbitration Procedure Rule 12514(a) because she did not produce the documents on time.[4]

---

[4] Ms. Akpele produced the documents 7 days (rather than 20 days) before the hearing. We note that Ms. Akpele's motion to vacate the arbitration award was also untimely.

The district court concluded that exclusion of the documents was reasonable because of Ms. Akpele's discovery violation.  The district court also found that the arbitral panel's decision was not made in bad faith and it did not deprive Ms. Akpele of a fair hearing.  We agree.

On appeal, Ms. Akpele claims that excluding the documents was a "manifest injustice," yet she does not provide any persuasive reason for how her right to a fair hearing was impacted.  Ms. Akpele not only downplays her own procedural error (that rendered the evidence inadmissible in the first place), but she ignores the district court's reasons for finding that the documents' inadmissibility was not prejudicial.  The district court noted that evidence from the excluded documents was elicited through witness testimony and that the panel's decision was consistent with their terms.  In other words, the panel agreed with Ms. Akpele that she remained the designated beneficiary of the variable annuity.  Ms. Akpele has not established that the panel was guilty of misconduct as described in § 10(a)(3).

## C

Ms. Akpele's final argument is that the district court abused its discretion in denying without prejudice her motion for default judgment against Mr. Tintle.  Ms. Akpele argues that, because Mr. Tintle failed to defend the original action and she satisfied the requirements for obtaining a default judgment, *see* Fed. R. Civ. P. 55(a), the district court should have granted her motion.  The district court,

however, denied Ms. Akpele's motion against Mr. Tintle without prejudice after it

determined that the only remaining claims against him were closely related to the

claims against Oppenheimer and Mr. Brown that were submitted to arbitration.

Ms. Akpele does not address her failure to re-file the motion at the close of

arbitration, and she fails to explain how the district court abused its discretion here.

## IV

We affirm the district court's decisions to compel arbitration, to confirm the

arbitration award, and to deny Ms. Akpele's motion for default judgment.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 05, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-11529-BB
Case Style:  Uzoamaka Akpele v. Pacific Life Insurance Company, et al
District Court Docket No:  1:12-cv-02170-WSD

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs